1  AARON M. CLEFTON, Esq.  (SBN 318680)
   REIN & CLEFTON, Attorneys at Law
2  1423 Broadway #1133
   Oakland, CA  94612
3  Telephone:  510/832-5001
   Facsimile:  510/832-4787
4  info@reincleftonlaw.com

5  Attorneys for Plaintiff
   JOSPEH SALAMONE

6

7              UNITED STATES DISTRICT COURT

8              SOUTHERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| 10  JOSPEH SALAMONE | CASE NO. '24CV1500 LL   VET |
|     Plaintiff, | Civil Rights |
| 11 | **COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:** |
| 12 | |
| 13  v. | **1. Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)** |
| 14 | |
| 15  EAST VILLAGE TAVERN & BOWL LLC, | **2. Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)** |
| 16 | |
| 17     Defendant. | **3. Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)** |
| 18 | |
| 19 | DEMAND FOR JURY TRIAL |
| 20 | |

21        Plaintiff JOSEPH SALAMONE complains of Defendant EAST VILLAGE

22  TAVERN & BOWL LLC, and alleges as follows:

23        1.    **INTRODUCTION:**  On or about June 4, 2024, Plaintiff called

24  Defendant to reserve a bowling lane at the Tavern & Bowl located at 930 Market

25  Street, San Diego, California, which is owned and operated by Defendant.  While

26  Plaintiff was reserving the lane, he alerted Defendant that he would be accompanied

27  by his service dog during his visit to the Tavern & Bowl.  Defendant's employee

28

1    immediately informed Plaintiff that dogs were not allowed inside of Tavern &
2    Bowl.  Plaintiff explained to Defendant's employee that his dog is a service dog
3    and therefore is allowed to accompany him inside the bowling alley. The employee
4    that Plaintiff was speaking with told Plaintiff that he would need to check with the
5    general manager and asked Plaintiff to hold. When Defendant's employee returned
6    to the phone, he confirmed that no dogs, including service dogs, are allowed at the
7    Tavern & Bowl.  Defendant's employee informed Plaintiff that if he came to the
8    Tavern & Bowl with his service dog, he would only be able to stay in the patio
9    area.  He stated that Plaintiff would be unable to come inside the bowling alley and
10   would therefore be unable to actually bowl.  Defendant's employee then hung up.

11          2.      In the days that followed, Plaintiff attempted to convince Defendant to
12   follow the law and allow him inside the Tavern & Bowl with his service dog,
13   Cammi, but Defendant refused.  On June 4, 2024, Plaintiff's friend called to reserve
14   a bowling lane and inquire about Defendant's service dog policy, but he was told
15   the same thing as Plaintiff: No dogs, including service dogs, are allowed inside the
16   Tavern & Bowl.

17          3.      On June 5, 2024, Plaintiff called the Tavern & Bowl twice to confirm
18   Defendant's service dog policy. Plaintiff spoke with Defendant's employee who
19   identified himself as "Nate" both times.  Plaintiff informed Nate that he would like
20   to come and bowl at the Tavern & Bowl but that he needed to be accompanied by
21   his service dog when he came to the premises. Nate informed Plaintiff that dogs,
22   even service dogs, are not allowed at the Tavern & Bowl. Plaintiff then called back
23   and spoke to Nate again.  This time Nate asked Plaintiff to hold while he checked
24   with the general manager regarding whether service dogs were allowed inside the
25   Tavern & Bowl.  When Nate returned to the phone, he told Plaintiff that he had
26   confirmed Defendant's policy with the General Manager, and dogs, including
27   service dogs were only allowed on the patio at the Tavern & Bowl.  Plaintiff would
28   not be allowed to bowl at the premises with his service dog.

4.     On June 6, 2024, Plaintiff again called the Tavern & Bowl to report the incident and try to convince Defendant to allow him inside.  Plaintiff spoke to an employee who identified herself as "Robyn."  Robyn refused to answer Plaintiff's questions, denied the events took place, and refused to identify her role within the company.  Tellingly, however, Robyn did not inform Plaintiff that he would be allowed inside the Tavern & Bowl with his service dog as is required by State and federal access law.

5.     Plaintiff, both individually and through counsel, made multiple pre-litigation attempts to resolve the dispute without the need for a lawsuit. All attempts to resolve the dispute without a lawsuit went unanswered by Defendant.  This is his first and only ADA lawsuit.

6.     Defendant's decision to exclude service dogs contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.

7.     DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/.

8.     As a result of Defendant's illegal acts, Plaintiff suffered denial of his civil rights and suffered physical, mental and emotional damages.  Plaintiff enjoys bowling with friends and family who live in the San Diego area, and he intends to return to patronize the Tavern & Bowl but cannot do so until the policies of the bowling alley are made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary employee training

3

and/or re-training. He has brought this lawsuit to force Defendant to change its
discriminatory and illegal policies, and to force Defendant to compensate him for
refusing to allow him inside the bowling alley because he is a physically disabled
person who needs the assistance of his qualified service dog.  Plaintiff seeks an
injunction to protect the rights of all disabled persons, including Plaintiff, when
accompanied by a qualified service dog at the Tavern & Bowl.

9. **JURISDICTION:**  This Court has jurisdiction of this action pursuant
to 28 USC sections 1331 and 1343.  This Court has jurisdiction over the claims
brought under California law pursuant to 28 U.S.C. § 1367.

10. **VENUE:**  Venue is proper in this court pursuant to 28 USC
section 1391(b) and is proper because the real property which is the subject of this
action is located in this district and that Plaintiff's causes of action arose in this
district.

11. **PARTIES:**  Plaintiff Joseph Salamone is a "qualified" disabled
person.  He suffers from supraventricular tachycardia ("SVT") and severe panic
disorder. The comorbid conditions can result in elevated heart rate, fainting, fear of
death, hyperventilation, pacing, and flushing.  Plaintiff relies upon his service dog,
a Maltese poodle named "Cammi," to alert him of the onset of symptoms and to
alert him to take medication to alleviate those symptoms.  At the onset of
symptoms, Cammi approaches Plaintiff and paws at him in order to alert him that
he needs to calm down.  If Plaintiff is unable to calm himself quickly, Cammi is
trained to alert him to take medication by going to where the medication is kept or
pawing at the pocket in Plaintiff's back where the medication is kept and letting out
a bark.  Plaintiff personally trained Cammi to assist him with the task she performs.
Plaintiff is a qualified person with a disability as defined under federal and state
law.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code
§ 12926(1).

12. Defendant EAST VILLAGE TAVERN & BOWL LLC, is and was at

all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject business, property and building located at 930 Market Street, San Diego, California known as the Tavern & Bowl.

13.     The Tavern & Bowl is a place of "public accommodation" and a "business establishment" subject to the requirements *inter alia* of multiple categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

14.     **FACTUAL STATEMENT:**  Plaintiff Joseph Salamone has been working with his service dog Cammi for five years.  Cammi is an eight-year-old Maltese poodle who was individually trained by Plaintiff to be a service dog.  Plaintiff has also continued to train Cammi to serve his specific needs throughout their relationship through a series of commands and gestures.  Cammi is specifically trained to alert Plaintiff of the onset of symptoms of SVT or a panic attack and to alert Plaintiff to take medication to alleviate those symptoms.

15.     Cammi is a working dog; she is not a pet.  Plaintiff and Cammi have trained extensively together, and they supplement that training daily.  Plaintiff takes Cammi everywhere with him in public unless he has already taken his medication that day.  Plaintiff takes his medication as needed, and once he has taken it, he no longer needs Cammi to remind him to take the medication.  If Plaintiff has not taken his medication, it is important he and Cammi stay together at all times because (a) Cammi provides important services for Plaintiff; (b) Cammi is a medical alert dog who is able to alert Plaintiff of potentially life-threatening medical conditions so that he can take medication and seek immediate medical treatment if necessary; and (c) it is part of the training and bonding requirement that they be together constantly to maintain their bond.  With few exceptions, where Plaintiff goes, Cammi goes.

16.     Plaintiff lives in Long Beach, but he has friends in family in the San

Diego area. Plaintiff visits the San Diego area multiple times a year to visit his friends and family.  Plaintiff made one such trip to San Diego at the beginning of June 2024. While he was visiting his cousins and friends, the group decided that it would be fun to go bowling.  Plaintiff loves bowling.  In fact, when he was younger, he used to be on a bowling team, so he was very excited about the prospect of a day of bowling with his family and friends.

17.    Plaintiff searched nearby bowling alleys online, and he found the Tavern & Bowl. On or about June 4, 2024, Plaintiff called Defendant to reserve a bowling lane.  While Plaintiff was reserving the lane, he alerted Defendant that he would be accompanied by his service dog during his visit to the Tavern & Bowl. Defendant's employee, immediately informed Plaintiff that dogs were not allowed inside of Tavern & Bowl.  Plaintiff explained to Defendant's employee that his dog is a service dog and therefore is allowed to accompany him inside the bowling alley. The employee that Plaintiff was speaking with told Plaintiff that he would need to check with the general manager and asked Plaintiff to hold. When Defendant's employee returned to the phone, he confirmed that no dogs, including service dogs, are allowed at the Tavern & Bowl.  Defendant's employee informed Plaintiff that if he came to the Tavern & Bowl with his service dog, he would only be able to stay in the patio area.  He stated that Plaintiff would be unable to come inside the bowling alley and would therefore be unable to actually bowl. Defendant's employee then hung up.

18.    In the days that followed, Plaintiff attempted to convince Defendant to follow the law and allow him inside the Tavern & Bowl with his service dog, Cammi, but Defendant refused.  On June 4, 2024, Plaintiff's friend called to reserve a bowling lane and inquire about Defendant's service dog policy, but he was told the same thing as Plaintiff: No dogs, including service dogs, are allowed inside the Tavern & Bowl.

19.    On June 5, 2024, Plaintiff called the Tavern & Bowl twice to confirm

6

1  Defendant's service dog policy. Plaintiff spoke with Defendant's employee who

2  identified himself as "Nate" both times.  During his first conversation on June 5th,

3  Plaintiff informed Nate that he would like to come and bowl at the Tavern & Bowl

4  but that he needed to be accompanied by his service dog when he came to the

5  premises. Nate informed Plaintiff that dogs, even service dogs, are not allowed at

6  the Tavern & Bowl.

7       20.    Plaintiff then called back and spoke to Nate again.  This time Nate

8  asked Plaintiff to hold while he checked with the general manager regarding

9  whether service dogs were allowed inside the Tavern & Bowl.  When Nate returned

10  to the phone, he told Plaintiff that he had confirmed Defendant's policy with the

11  General Manager, and dogs, including service dogs were only allowed on the patio

12  at the Tavern & Bowl.  Plaintiff would not be allowed to bowl at the premises with

13  his service dog.

14       21.    On June 6, 2024, Plaintiff again called the Tavern & Bowl to report the

15  incident and try to convince Defendant to allow him inside.  Plaintiff spoke to an

16  employee who identified herself as "Robyn."  Robyn refused to answer Plaintiff's

17  questions, denied the events took place, and refused to identify her role within the

18  company.  Tellingly, however, Robyn did not inform Plaintiff that he would be

19  allowed inside the Tavern & Bowl with his service dog as required by State and

20  federal access law.

21       22.    Ultimately, it was clear to Plaintiff that he would not be allowed to eat

22  and bowl inside the Tavern & Bowl, so he decided not to make a reservation.

23  Plaintiff was disappointed that he was not able to go bowling with his family.

24       23.    Plaintiff wishes to return to the Tavern & Bowl, but only *after*

25  Defendant's have implemented proper service animal policies and training of its

26  staff.  Plaintiff is deterred from returning to the Tavern & Bowl until these policies

27  and training are in place.

28  //

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 USC §§ 12101 *et seq.*)**

24.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 23, above, and incorporates them herein by reference as if separately repled hereafter.

25.     In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."  42 U.S.C. § 12101(a).

26.     The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

27.     Plaintiff Salamone is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

28.     The Tavern & Bowl is a public accommodation within the meaning of Title III of the ADA.  42 U.S.C. § 12181(7)(B) and (L).

29.     The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such

modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go."  ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

31.     Defendant has a policy and practice of denying guests who use service dogs access to the Tavern & Bowl. This is contrary to the ADA.  The Department of Justice issued guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/.

32.     On information and belief, as of the date of Plaintiff's most recent attempt to visit to Tavern & Bowl on or about June 4th and June 5th, 2024, Defendant continues to deny full and equal access to Plaintiff and to discriminate

against Plaintiff on the basis of Plaintiff's disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

33.     In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

34.     As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility are one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes any "restaurant, bar, or other establishment serving food or drink" (42 USC § 12181(7)(B)) and any "bowling alley" (42 USC § 12181(7)(L)).

35.     The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory

10

to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendant set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

36.    The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.  As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law.  In the event that removal of any

barrier is found to be "not readily achievable," Defendant still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

37.    On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff Spector on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

38.    Defendant's actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing the Tavern & Bowl and discriminated and continue to discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

39.    Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of his disabilities in violation of sections 12182 and 12183.  On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Pursuant to section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities

to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

40.   Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff is a qualified disabled person for purposes of § 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing he will be subjected to such discrimination each time that he may use the property and premises, or attempt to patronize the Tavern & Bowl, in light of Defendant's policies barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## SECOND CAUSE OF ACTION:
### VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)

41.   Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 40 of this Complaint and incorporates them herein as if separately re-pleaded.

42.   At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

43.   California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

44.   Each of Defendant's discriminatory acts or omissions constitutes a

13

separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

45.     Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

46.     The actions and omissions of Defendant as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs within the meaning of California Civil Code sections 51 and 52.  As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory and compensatory to Plaintiff, according to proof.

47.     **FEES AND COSTS:**  As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation

1  expenses and costs pursuant to the provisions of California Code of Civil Procedure

2  section 1021.5 and other applicable law.

3      48.    Plaintiff suffered damages as above-described as a result of

4  Defendant's violations.

5          WHEREFORE, Plaintiff prays for relief as hereinafter stated.

6                    **THIRD CAUSE OF ACTION:**
                     **DAMAGES AND INJUNCTIVE RELIEF**
7      **FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC**
                 **FACILITIES  IN A PUBLIC ACCOMMODATION**
8                      **(Civil Code §§ 54 *et seq.*)**

9      49.    Plaintiff re-pleads and incorporates by reference, as if fully set forth

10  hereafter, the factual allegations contained in Paragraphs 1 through 48 of this

11  Complaint and all paragraphs of the third cause of action, as plead infra,

12  incorporates them herein as if separately re-pleaded.

13     50.    Under the California Disabled Persons Act (CDPA), people with

14  disabilities are entitled to the "full and free use of . . . public buildings, . . . public

15  facilities, and other public places."  Civil Code § 54(a).

16     51.    Civil Code section 54.1(a)(1) further guarantees the right of "full and

17  equal access" by persons with to "accommodations, advantages, facilities . . .

18  hotels, lodging places of accommodation, amusement or resort, or other places to

19  which the general public is invited."  Civil Code § 54.1(c) also specifies that,

20  "individuals with a disability and persons authorized to train service dogs for

21  individuals with a disability, may take dogs, for the purpose of training them as

22  guide dogs, signal dogs, or service dogs in any of the places specified in

23  subdivisions (a) and (b)."

24     52.    Civil Code section 54.2(a) specifically protects the right of "every

25  individual with a disability" "to be accompanied by a guide dog, signal dog, or

26  service dog, especially trained for the purpose, in any of the places specified in

27  Section 54.1."

28

53.     Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

54.     Defendant is also in violation of California Penal Code section 365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

55.     The Tavern & Bowl is a public accommodation within the meaning of the CDPA. On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

56.     Defendant made the decision to knowingly and willfully exclude Plaintiff and his service dog from its public accommodation and thereby denied Plaintiff his right of entrance into its place of business with his service dog. As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this public accommodation and place of business based upon Defendant's illegal refusal to allow Plaintiff to be accompanied by his service dog, a legally protected right. Plaintiff has continued to suffer denial of access to these facilities, and he faces the prospect of unpleasant and discriminatory treatment should he attempt to return to these facilities. Plaintiff is unable to return to the Tavern & Bowl until he receives the protection of this Court's injunctive relief, and he has continued to suffer discrimination on a daily basis since June 4, 2024, all to

1   his statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and

2   California Penal Code section 365.5.

3       57.   **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit

4   the acts and omissions of Defendant as complained of herein which are continuing

5   on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff

6   and other members of the public who are disabled and who require the assistance of

7   service animals from full and equal access to these public facilities.  Such acts and

8   omissions are the cause of humiliation and mental and emotional suffering of

9   Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-

10  class citizen and serve to discriminate against him on the sole basis that Plaintiff is

11  a person with disabilities who requires the assistance of a service animal.

12      58.   Plaintiff wishes to return to patronize the Tavern & Bowl but is

13  deterred from returning to use these facilities, because the lack of access and the

14  significant policy barriers will foreseeably cause him further difficulty, discomfort

15  and embarrassment, and Plaintiff is unable, so long as such acts and omissions of

16  Defendant continue, to achieve equal access to and use of these public facilities.

17  Therefore, Plaintiff cannot return to patronize the Tavern & Bowl and its facilities

18  and is deterred from further patronage until these facilities are made properly

19  accessible for disabled persons, including Plaintiff and other disabled individuals

20  who require the assistance of a service animal.

21      59.   The acts of Defendant have proximately caused and will continue to

22  cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks

23  injunctive relief as to Defendant's inaccessible policies.   As to the Defendant that

24  currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff

25  seeks preliminary and permanent injunctive relief to enjoin and eliminate the

26  discriminatory practices that deny full and equal access for disabled persons and

27  those associated with them, and seeks an award of reasonable statutory attorney

28  fees, litigation expenses and costs.

60.     Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply forthwith with the applicable statutory requirements relating to access for disabled persons. Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

61.     **DAMAGES:**  As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of his civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to his damages per Civil Code section 54.3, including general and statutory damages, as hereinafter stated.  Defendant's actions and omissions to act constitute discrimination against Plaintiff on the basis that he was and is disabled and unable, because of the policy barriers created and/or maintained by the Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to attempt to patronize the Tavern & Bowl and will continue to cause him damages each day these barriers to access and policy barriers continue to be present.

62.     Although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant was aware and/or was made aware of its duties to refrain from establishing discriminatory policies against

18

disabled persons, prior to the filing of this complaint.  Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for Plaintiff's rights and safety.

63. **FEES AND COSTS:**  As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

64. Plaintiff suffered damages as above described as a result of Defendant's violations.  Damages are ongoing based on their deterrence from returning to the Tavern & Bowl.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless Plaintiff is granted the relief he requests. Plaintiff and Defendant have an actual controversy and opposing legal positions as to Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount

under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Paul Spector prays for judgment and the following specific relief against Defendant:

1. An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

    a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b. To modify its policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that his service dog will not be excluded should he desire to enter and use the services of the Tavern & Bowl;

    c. That the Court issue preliminary and permanent injunction directing Defendant as current owner, operator, lessor, and/or lessee and/or its agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

    d. An order retaining jurisdiction of this case until Defendant has fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

1   2.  An award to Plaintiff of statutory, actual, general, and punitive

2 damages in amounts within the jurisdiction of the Court, all according to proof;

3   3.  An award of civil penalty as against Defendant under California Penal

4 Code § 365.5(c);

5   4.  An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a,

6 California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5,

7 and as otherwise permitted by law, of the costs of this suit and reasonable attorneys'

8 fees and litigation expenses;

9   5.  An award of prejudgment interest pursuant to Civil Code § 3291;

10   6.  Interest on monetary awards as permitted by law; and

11   7.  Grant such other and further relief as this Court may deem just and

12 proper.

13 Date: August 23, 2024     REIN & CLEFTON

14

15           */s/ Aaron M. Clefton*
By AARON M. CLEFTON, Esq.

16           Attorneys for Plaintiff
JOSEPH SALAMONE

17

18        **JURY DEMAND**

19   Plaintiff hereby demands a trial by jury for all claims for which a jury is

20 permitted.

21 Date: August 23, 2024     REIN & CLEFTON

22

23           */s/ Aaron M. Clefton*
By AARON M. CLEFTON, Esq.

24           Attorneys for Plaintiff
JOSEPH SALAMONE

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES